**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ANGELA DENES, | : | |
| 242 County Road 26 | | |
| Marengo, Ohio 43334 | : | CASE NO. 2:23-cv-1536 |
| Plaintiff, | : | |
| v. | : | |
| SHERIFF JOHN L. HINTON, | : | **42 U.S.C. §1983 Civil Complaint** |
| 101 Home Road | | |
| Mt. Gilead, Ohio 43338 | : | **Jury Demand Endorsed Herein** |
| and | : | |
| ANDREAS D. COTTER, | : | |
| 141 East High Street | | |
| Edison, Ohio 43320 | : | |
| and | : | |
| AARON LONG, | : | |
| 5205 State Route 540 | | |
| Bellefontaine, Ohio 43311 | : | |
| Defendants. | : | |

**COMPLAINT**

Now comes Plaintiff Angela Denes, by and through undersigned counsel, and for her Complaint against the Sheriff John L. Hinton, Andreas D. Cotter, and Aaron Long (collectively "Defendants") states as follows:

**NATURE OF ACTION AND JURISDICTION**

1. This is a civil action brought under 42 U.S.C. § 1983 seeking damages against Defendants for committing acts, under color of state law, with the intent and purpose of depriving

1

Plaintiff of her rights under the Constitution and laws of the United States and for refusing or neglecting to prevent such deprivations and denials to Plaintiff.

2. This case arises under the United States Constitution and 42 U.S.C. §§ 1983 and 1988. The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This case also involves claims arising under State law that are so related to Plaintiff's § 1983 claim that they form part of the same case or controversy under Article III of the United States Constitution. The Court has supplemental jurisdiction over those matters pursuant to 28 U.S.C. § 1367.

4. This suit challenges certain actions undertaken by Defendants which caused Plaintiff to be deprived of her constitutional rights.

5. This Court is an appropriate venue for this cause of action under 28 U.S.C. §§ 1391(b)(1) and (b)(2). The actions complained of took place within this judicial district; evidence, employment records, and police reports relevant to the accusations are maintained in this judicial district; and upon information and belief, all Defendants are present and regularly conduct affairs in this judicial district.

## PARTIES

6. Plaintiff Angela Denes ("Ms. Denes") is a resident of Morrow County, Ohio.

7. Defendant John L. Hinton ("Sheriff Hinton") is an individual and is sued in his individual capacity. Upon information and belief, Sheriff Hinton resides in Morrow County and, at all times material to the instant matter, was the elected Sheriff of Morrow County and acting within the scope and course of that position and employment.

8. Defendant Andreas D. Cotter ("Defendant Cotter") is an individual and is sued in his individual capacity. Upon information and belief, Defendant Cotter resides in Morrow

County, Ohio. At all times material to the instant matter, Defendant Cotter was employed as a Deputy with the Morrow County Sheriff's Office and was acting within the scope and course of that employment.

9. Defendant Aaron Long ("Defendant Long") is an individual and is sued in his individual capacity. Upon information and belief, Defendant Long is employed as a police officer with the Marysville Police Department but was not acting within a law enforcement capacity during the events set forth in the instant matter.

10. At all times relevant to this Complaint, Defendants Hinton and Cotter acted under color of state law.

11. All relevant conduct set forth in this Complaint took place within Morrow County, Ohio.

## FACTS

12. On May 8, 2022, Ms. Denes was operating her Dodge Ram on County Road 15 near the Groovy Plant Ranch ("GPR"), located at 4140 County Road 15, Marengo, Ohio 43334, which is geographically situated in Morrow County, Ohio.

13. At that time, Defendant Cotter, a deputy employed by the Morrow County Sheriff's Office, was working special duty at GPR. His duties purportedly included directing traffic.

14. Despite Defendant Cotter's presence and purported traffic-directing responsibilities, dozens of pedestrians were walking on the roadway through vehicular traffic, which itself had been at a near standstill for approximately forty-five-minutes leading up to the events set forth within the instant Complaint.

15. As a result of these circumstances, numerous drivers had been complaining and honking. According to a report prepared by Defendant Cotter, the honking and shouting began around 12:50 p.m. and continued for approximately thirty minutes.

16. At approximately 1:20 p.m., Defendant Cotter abandoned his traffic-directing duties to purportedly investigate the source of the shouting and honking. After passing numerous vehicles being operated by male drivers, Defendant Cotter stopped at Ms. Denes' vehicle.

17. Upon reaching Ms. Denes' truck, Defendant Cotter marched up to her open window, leaned in, and shouted, "Don't honk your horn again!"

18. When Ms. Denes, whose own daughter had died in a vehicle-pedestrian collision, pointed out the clear safety hazard associated with pedestrians walking through traffic, Defendant Cotter screamed at her to "shut her fucking mouth!" He further threatened Ms. Denes that, if she honked again, he would "take her in."

19. When Ms. Denes told Defendant Cotter that he would be responsible for any injuries or fatalities, he immediately began to grab at her door and yelled "out of the car!" At this time, Ms. Denes yelled back at Defendant Cotter that he needed backup.

20. At this time, Ms. Denes' vehicle was still in operation, in a lane of travel, and in drive. The only thing keeping it from rolling forward into the next car was Ms. Denes' foot on the brake.

21. After yanking Ms. Denes' door open, Defendant Cotter aggressively grabbed her arm and began physically dragging her out of the truck. At the same time, Ms. Denes made several desperate attempts to put the truck into park.

22. Notably, in addition to being a cancer survivor, Ms. Denes has previously experienced several other serious medical issues which required major surgical procedures, including the insertion of a replacement vertebra into her neck, as well as reconstructive surgery on her left shoulder. These medical procedures have not only limited Ms. Denes' range of

motion in her left arm, but also result in extreme pain when the arm is violently manipulated.

23. Ms. Denes immediately cried out in pain and attempted to explain her medical history while begging for medical assistance. The passengers in her vehicle began to do the same. Undeterred by Ms. Denes' clear distress or the provided medical information, Defendant Cotter only intensified his efforts to remove her from the truck.

24. Ultimately, Ms. Denes was unable to shift the truck out of drive before Defendant Cotter pulled her out and thew her to the ground. As a result, she and Defendant Cotter were nearly run over as the truck began to idle forward in the absence of an operator. Ms. Denes continued to cry out and ask for medical assistance.

25. After reaching into the truck's passenger compartment to put it in park, Defendant Cotter continued his violent assault, purportedly to place Ms. Denes in handcuffs. His efforts included bodily pulling and dragging Ms. Denes across a full lane of travel, to the far side of the road, as she laid on the ground in pain. Ms. Denes continued to cry out and ask for medical assistance.

26. At this time, another individual, Defendant Aaron Long, joined the assault. He physically pulled Ms. Denes' left arm far higher than its normal range of motion, flipped her onto her right side, placed his hand and knee on her back, then used his entire body weight to pin her in place. At this time, the pain caused by Cotter and Long's joint assault caused Ms. Denes to urinate.

27. Ms. Denes continued to cry out and ask for medical assistance. In response, Defendant Cotter placed his hand on the back of her neck and ground her face into the pavement and gravel on the side of the road.

5

28. After Defendant Cotter yanked Ms. Denes to her feet, another individual, Wayne Thompson, attempted to assist her by wiping the gravel from her face. Ms. Denes continued to cry out and ask for medical assistance.

29. Defendant Cotter still made no attempt to assist Ms. Denes, but instead attempted to march her towards his squad car. However, given her injuries and medical condition, Ms. Denes was barely able to remain standing and doubled over in pain on several occasions.

30. Despite full knowledge that Ms. Denes required medical assistance, Defendant Cotter did absolutely nothing to ensure that she received any medical treatment. On the contrary, he arranged to have her transported to jail. Ms. Denes spent the entire trip moaning and crying in pain.

31. Upon her arrival at the Morrow County Jail, officers immediately determined that Ms. Denes required medical assistance and transported her to the hospital. There, in addition to her medical injuries, it was determined that her glucose level was nearly 300 mg/dL, a dangerously high level, which was brought about by the delay in getting home to take her medication.

32. Despite having no lawful authority to order Ms. Denes out of her vehicle, Defendant Cotter cited her with Failure to Comply in violation of R.C. 2921.331.

33. Despite having no lawful basis upon which to arrest Ms. Denes, nor having ever informed her that she was being placed under arrest, Defendant Cotter also cited Ms. Denes with Resisting Arrest in violation of R.C. 2921.33.

34. In an effort to justify these spurious charges, Defendant Cotter prepared and filed a police report which contained, *inter alia*, the following claims:

    a. That "people in the area" had claimed that Ms. Denes' behavior was threatening;

6

b. That Ms. Denes had been shouting "get the fuck out of the way" and "fucking move" as she "blew her horn;"

c. That "other people in the area" were pointing at Ms. Denes "as if guiding him to her;"

d. That Ms. Denes was "frantically screaming obscenities" and "still honking" as he approached her truck;

e. That Ms. Denes continued to "scream and curse at Defendant Cotter and others" as he spoke to her;

f. That "people continued to get upset with her" continued conduct;

g. That Defendant Cotter attempted to de-escalate the situation by walking away, but that Ms. Denes continued to honk and scream obscenities;

h. That, when he turned back, Ms. Denes continued to honk and scream and "actually seemed to get louder;"

i. That Defendant Cotter ordered Ms. Denes out of the vehicle and informed her that she was under arrest;

j. That Ms. Denes continued to scream obscenities at Defendant Cotter;

k. That, after she was removed from the truck, Ms. Denes resisted arrest by "putting her left hand behind her back;"

l. That, "as we passed by people" on the way to the cruiser, "crowds were cheering and mocking her;"

m. That Ms. Denes was transported directly to Morrow County Hospital ("MCH") where "no major injuries or evidence of medical emergency" was located;

n. That Aaron Long "had witnessed the event;" and

7

    o. That Wayne Thompson "witnessed the entire event…and corroborated her disorderly conduct."

35. Upon information and belief, Defendant Cotter knew that the factual allegations contained in his narrative report were unequivocally false at the time it was prepared.

36. Upon information and belief, Defendant Cotter was unaware when preparing the report that numerous parties had recorded his interaction with Ms. Denes, and that those recordings were entirely inconsistent with his version of events.

37. Ms. Denes exercised her right to a jury trial with respect to the two charges filed by Defendant Cotter. During that trial, Defendant Cotter maintained several of the claims set forth in his report, while downplaying, modifying, or outright withdrawing other allegations.

38. During Ms. Denes' trial, Defendant Cotter was unable to identify or describe any of the individuals who had purportedly claimed that Ms. Denes' behavior was threatening, who had directed him to Ms. Denes' vehicle, who had allegedly been the target of Ms. Denes' obscenities, who were upset with Ms. Denes, or who had been part of the "crowd" who "cheered and mocked her" as he led Ms. Denes to the squad car. Moreover, the video recordings played during the trial disproved the existence of any such individuals.

39. During Ms. Denes' trial, the video recordings further demonstrated that Ms. Denes was not honking or cursing at Defendant Cotter leading up to her purported arrest, but rather that she was criticizing his management of the vehicular and pedestrian traffic around GPR. The recordings further proved that Defendant Cotter had never informed Ms. Denes that she was being placed under arrest.

40. During Ms. Denes' trial, Aaron Long testified that he had not witnessed the event, merely parts of it. Furthermore, Mr. Thompson's recording of the events did not corroborate an uncharged disorderly conduct violation. Finally, the video recordings disproved any claim that Ms. Denes had tried to resist arrest by putting her hand behind her back.

41. At the conclusion of the State's case, and in the absence of any evidence sufficient to support a conviction, the trial court granted Ms. Denes' oral motion for acquittal as to the Resisting Arrest offense. The jury later acquitted her with respect to the Failure to Comply offense.

### COUNT ONE—VIOLATION OF CIVIL RIGHTS UNDER FIRST AND FOURTEENTH AMENDMENTS (FREE SPEECH/RETALIATORY ARREST)

42. Plaintiff realleges and incorporates herein by reference all allegations set forth in Paragraphs 1 through 41 of the Complaint.

43. The First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, guarantees individuals the right to be free from retaliatory arrest for the exercise of constitutionally protected speech.

44. Defendant Cotter was aware, or should have been aware, that Ms. Denes' criticism of his job performance and assertion that he should have other officers assisting him was constitutionally protected political speech.

45. Given the absence of any evidence sufficient to demonstrate an arrestable offense, much less probable cause to believe that any such offense had been committed, Defendant Cotter's decision to arrest Ms. Denes was clearly and objectively an effort to retaliate against her for expressing constitutionally protected criticism of his job performance.

46. As a direct and proximate result of the aforementioned acts, Ms. Denes suffered actual, physical harm, and was unlawfully deprived of her liberty.

## COUNT TWO—VIOLATION OF CIVIL RIGHTS UNDER FOURTH AND FOURTEENTH AMENDMENTS (FALSE ARREST/FALSE IMPRISONMENT)

47. Plaintiff realleges and incorporates herein by reference all allegations set forth in Paragraphs 1 through 46 of the Complaint.

48. The Fourth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, guarantees individuals the right to be free from unreasonable personal seizures.

49. Moreover, the Fourth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, guarantees individuals the right not to be subjected to false arrest and/or false imprisonment.

50. Defendant Cotter was aware, or should have been aware, that Ms. Denes had a right to be free from unreasonable force, including the right to be free from false arrest and false imprisonment. In blatant violation of those rights, Defendant Cotter arrested and jailed Plaintiff against her will and in the complete absence of sufficient evidence, much less probable cause, to believe that she had committed an arrestable offense.

51. As a direct and proximate result of the aforementioned acts, Ms. Denes suffered actual, physical harm, and was unlawfully deprived of her liberty.

## COUNT THREE—VIOLATION OF CIVIL RIGHTS UNDER FOURTH AND FOURTEENTH AMENDMENTS (EXCESSIVE FORCE)

52. Plaintiff realleges and incorporates herein by reference all allegations set forth in Paragraphs 1 through 51 of the Complaint.

53. The Fourth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, guarantees individuals the right to be free from unreasonable personal seizures.

54. Moreover, the Fourth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, guarantees individuals the right not to be subjected to excessive force when being stopped or arrested by law enforcement.

55. Defendant Cotter was aware, or should have been aware, that Ms. Denes had a right to be free from unreasonable seizures, as well as a right not to be subjected to excessive force when being stopped or arrested. In blatant violation of those rights, Defendant Cotter maliciously and intentionally utilized extreme and excessive force over a prolonged period with the express purpose of causing Ms. Denes physical harm.

56. As a direct and proximate result of the aforementioned acts, Ms. Denes suffered actual, physical harm, and was unlawfully deprived of her liberty.

### COUNT FOUR—VIOLATION OF CIVIL RIGHTS UNDER FOURTH AND FOURTEENTH AMENDMENTS (MALICIOUS PROSECUTION)

57. Plaintiff realleges and incorporates herein by reference all allegations set forth in Paragraphs 1 through 56 of the Complaint.

58. The Fourth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, guarantee individuals the right to be free from malicious prosecution.

59. Defendant Cotter was aware, or should have been aware, that Ms. Denes had a right to be free from malicious prosecution. Nevertheless, Defendant Cotter initiated criminal proceedings against Plaintiff through the use of false factual allegations in the absence of probable cause, for no other purpose but to maliciously harm and punish her.

60. As a direct and proximate result of the aforementioned acts, Ms. Denes was deprived of her liberty and forced to incur substantial legal fees to defend herself against Defendant Cotter's false claims.

## COUNT FIVE—VIOLATION OF CIVIL RIGHTS UNDER FOURTH AND FOURTEENTH AMENDMENTS (FAILURE TO TRAIN)

61. Plaintiff realleges and incorporates herein by reference all allegations set forth in Paragraphs 1 through 60 of the Complaint.

62. Sheriff Hinton has direct oversight over the Morrow County Sheriff's Office. As such, Sheriff Hinton has a duty to adequately train, supervise, and discipline his deputies to protect members of the public, including Ms. Denes, from being unlawfully arrested in retaliation for the exercise of constitutionally protected speech, as well as from false arrest, excessive force, malicious prosecution, and other violations of their constitutional rights.

63. Upon information and belief, Sheriff Hinton was aware or should have been aware that Defendant Cotter abused his apparent authority as a deputy with the Morrow County Sheriff's Office to deprive individuals, including Ms. Denes, of their constitutional rights.

64. Upon information and belief, Sheriff Hinton has a history, custom, propensity, or practice of failing to provide proper training to his deputies to prevent unlawful arrests in retaliation for the exercise of constitutionally protected speech, false arrests, the use of excessive force, malicious prosecutions, and other violations individuals' constitutional rights

65. Upon information and belief, Sheriff Hinton has failed to discipline any of his employees, including Defendant Cotter, for their violations of the aforementioned constitutional rights.

66. Upon information and belief, the continued failure of Sheriff Hinton to provide necessary training, supervision, or discipline to his deputies constitutes a deliberate indifference to the physical safety of Morrow County citizens, as well as their constitutional rights.

67. As a direct and proximate result of the foregoing, Ms. Denes suffered actual, physical harm, an unlawful deprivation of her liberty, and was forced to incur legal fees to defend against Defendant Cotter's false claims.

## COUNT SIX —BATTERY (STATE LAW)

68. Plaintiff realleges and incorporates herein by reference all allegations set forth in Paragraphs 1 through 67 of the Complaint.

69. In engaging in the foregoing acts, Defendants Cotter and Long acted knowingly and/or intentionally and in a harmful and offensive manner toward the Ms. Denes without her consent.

70. As a direct and proximate result of Defendants' conduct, Plaintiff has, in fact, suffered from harmful touching without her consent, as well as actual physical harm and pain.

## COUNT SEVEN —SHAM LEGAL PROCESS (STATE LAW)

71. Plaintiff realleges and incorporates herein by reference all allegations set forth in Paragraphs 1 through 70 of the Complaint.

72. Defendant Cotter knew, at the time of their creation, that the criminal complaints issued against Ms. Denes were devoid of any factual or legal merit and, as such, were not lawfully issued.

73. Defendant Cotter nevertheless issued the same in a successful effort to punish Ms. Denes for the exercise of her constitutional right to free speech, and to effectuate her false arrest.

74. In issuing the foregoing criminal complaints, Defendant Cotter's conduct further constituted a criminal violation of R.C. 2921.45, which prohibits public servants from knowingly depriving any person of a constitutional or statutory right.

75. Based on the foregoing, Defendant Cotter is liable to Ms. Denes not only for the injury caused by his use of sham process, but also for her attorney fees, court costs, and other expenses incurred in the prosecution of this action. R.C. 2921.52(E).

## PRAYER FOR RELIEF

**WHEREFORE**, in light of the foregoing, Plaintiff demands judgment in her favor against Defendants; that she be awarded those compensatory damages in an amount to be shown at trial; that she be awarded costs, attorney fees, and expenses for this action; and she be awarded any other legal and equitable relief that this Court deems proper.

    Respectfully submitted,

    /s/ Samuel H. Shamansky
    SAMUEL H. SHAMANSKY CO., L.P.A.

    Samuel H. Shamansky (0030772)
    Donald L. Regensburger (0086958)
    523 South Third Street
    Columbus, Ohio 43215
    (614) 242-3939 – Phone
    (614) 242-3999 – Fax
    shamanskyco@gmail.com

    Counsel for Plaintiff

## DEMAND FOR JURY TRIAL

Trial by jury is demanded on all issues so triable.

    Respectfully submitted,

    /s/ Samuel H. Shamansky
    SAMUEL H. SHAMANSKY CO., L.P.A.

    Samuel H. Shamansky (0030772)
    Donald L. Regensburger (0086958)
    523 South Third Street
    Columbus, Ohio 43215
    (614) 242-3939 – Phone
    (614) 242-3999 – Fax
    shamanskyco@gmail.com

    Counsel for Plaintiff